United States District Court
District Of Maine

| | |
|---|---|
| Lynn M. Keeran, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>Discovery House-BR, Inc., )<br>)<br>and )<br>)<br>Acadia Health Care, Inc. )<br>)<br>    Defendants. ) | Docket No. |

**Complaint and Demand for Jury Trial and
Injunctive Relief Sought**

Plaintiff Lynn M. Keeran brings this civil rights action against Discovery House-BR, Inc. (Discovery House) and Acadia HealthCare, Inc. (Acadia) and complains as follows:

**Summary of the Action**

1.   Throughout the 14 months that Ms. Keeran worked as an administrative assistant for Defendants, Program Director Brent Miller subjected her to degrading physical and near-constant sexual harassment. Program Director Miller frequently pressed his body against Ms. Keeran's, looked her up and down while licking his lips and groaning, and looked down

1

her shirt. He asked her not to wear cardigan sweaters to work so he could see more of her body, and he told her he had a dream about her wearing red, and then asked her to wear that color to work.

2. About two weeks after Ms. Keeran first reported the Program Director's sexual harassment to Acadia's human resources department, she was abruptly fired while on an approved medical leave. Defendants expressly told her the termination was based on text messages she exchanged with a female co-worker about the investigation of Program Director and Program Manager for their reported misconduct. Ms. Keeran was given no warning or progressive discipline before the sudden termination. Within a week of terminating Ms. Keeran's employment, Defendants also terminated the employment of the two other women who had spoken up about Director's sexual harassment.

3. The Maine Human Rights Commission (MHRC) investigated the termination and in November 2018 it issued a finding of reasonable grounds to believe that Discovery House discriminated against Ms. Keeran on the basis of sex, subjected her to a sex-based hostile work environment, and retaliated against her for engaging in protected conduct.

## Parties

4. Plaintiff, Lynn M. Keeran, is a citizen of the United States and a resident of Eddington, County of Penobscot, Maine.

5. Defendant Discovery House is a corporation doing business in Maine and organized under the laws of the State of Maine.

6. Defendant Acadia is a corporation doing business in Maine with company headquarters in Franklin, Tennessee, and organized under the laws of the State of Delaware. Acadia is a multi-state health care organization that provides psychiatric and chemical dependency services to its patients in a variety of settings across the county.

## Jury Trial Demand

7. Under Fed. R. Civ. P. 38(b), Plaintiff demands trial by jury on all issues triable by a jury.

## Jurisdiction and Venue

8. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Maine Human Rights Act, 26 M.R.S. §§ 831 *et seq.*; and the Maine Whistleblowers' Protection Act, 26 M.R.S.A. §§ 831-840. This Court has proper subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 (federal question) and supplemental jurisdiction over Plaintiff's state law-based claims.

9. Venue is proper in the District of Maine under 28 U.S.C. § 1391(a). Under Rule 3(b) of the Rules of this Court, this action is properly filed in Bangor because Plaintiff's employment was based in the city of Bangor in Penobscot County.

## Facts

10. In October 2014, Ms. Keeran began working at Discovery House as an administrative assistant.

11. Ms. Keeran worked as the administrative assistant to Program Manager Eric Herschell ("the Manager"), and Program Director Brent Miller ("the Director").

12. The Director repeatedly made sexual remarks and physical sexual advances toward Ms. Keeran and other female employees at Discovery House.

13. The Director told Ms. Keeran that he preferred her not to wear cardigan sweaters so he could see more of her body.

14. The Director also told Ms. Keeran that he had a dream about her wearing red and he wanted her to wear red to work.

15. After Director noticed one day that Ms. Keeran had a bagel for lunch, he repeatedly brought her bags of bagels at work and asked her to go with him one-on-one to a bagel shop an hour's drive from the office.

16. Ms. Keeran often observed the Director leering at her and other female employees, looking them up and down, licking his lips, and making groaning noises.

17. The Director routinely came up behind Ms. Keeran and hugged her.

18. The Director repeatedly pressed his body up against hers, often to the point that Ms. Keeran was forced into a corner.

19. The Director regularly sat down on Ms. Keeran's desk and looked down her shirt.

20. As a result of this degrading harassment, Ms. Keeran avoided being alone with the Director.

21. Ms. Keeran and her female colleagues made a pact not to go into the Director's office alone.

22. The Director repeatedly gave Ms. Keeran gift cards, for no apparent work-related reason.

23. The Director also offered the Manager's position to Ms. Keeran on several occasions, but Ms. Keeran refused.

24. The Manager made sexual advances on Ms. Keeran as well.

25. Ms. Keeran tried to resist his advances by repeating that she was happily married.

26. In the spring or summer of 2015, the Manager took off his wedding ring and put it on Ms. Keeran's keyboard. He then asked her whether he should put it back on.

27. In late 2015, Ms. Keeran and other female employees complained to the Manager on at least three different occasions about the Director's sexual harassment.

28. The Manager took no action to investigate or stop the harassment. Instead, he told Ms. Keeran and the other female employees to "just hang in there" until he took over, since the Director was close to retirement.

29. The Manager also told them, "This is a boys' club, nothing will change."

30. Ms. Keeran and two other employees also complained to Carol Ackley, a supervisor in charge of counselors, about the Director's harassment.

31. Mr. Ackley also declined to get involved or otherwise intervene, and instead referred Ms. Keeran and others to a company advocate by the name of Ricky.

32. Ms. Keeran and a colleague explained Director's ongoing sexual harassment to advocate Ricky. He directed them to corporate human resources.

33. Ms. Keeran and her colleagues had not received information from the corporate home office regarding Acadia's procedures for reporting harassment.

34. Ms. Keeran was scheduled to begin a two week medical leave of absence on December 3, 2015 to have surgery in connection with an endometriosis diagnosis.

35. Before Ms. Keeran left work on December 2, the Director left a note on Ms. Keeran's desk asking, "Did you call [advocate]?"

36. The advocate and Director were good friends.

37. Shortly before Ms. Keeran went out on medical leave, two of her female colleagues advised Ms. Keeran that they contacted Acadia human resources representative Shannon Slade by phone and reported several issues, including Director's sexual harassment of them and an incident where Manager slapped one of the women's behinds.

38. Ms. Keeran's colleagues told her that Ms. Slade seemed to take their reports seriously and would help fix things at work; they asked Ms. Keeran if she would speak with human resources to verify information regarding their harassment complaints and Ms. Keeran agreed.

39. On the evening of December 3, 2015 Ms. Slade called Ms. Keeran and they spoke for approximately two hours.

40. On that two-hour call, Ms. Keeran reported to Ms. Slade that:

   a. The Director had been sexually harassing her and other female employees;

   b. The Manager was often absent from work or arrived drunk and bragged about it;

   c. The Manager stole gift cards meant for patients;

   d. The Manager double-charged co-pays for MaineCare recipients who did not specifically request receipts, pocketed the funds, and called it "lunch money";

   e. The Director gave Manager money from a slush fund he called "the bucket" to pay Manager's rent; and

   f. The Manager used the company credit card to buy things for his home.

41. Ms. Slade arrived at Discovery House on December 4, 2015.

42. The day before Ms. Slade's December 4 visit, the Director and Manager for the first time posted required labor notices, including notices about legal protections against discrimination.

43. On December 14, 2015, Ms. Keeran had a text exchange with a coworker about their supervisors being under investigation, Discovery House nurses' concerns about their safety and maintenance of their licensure, and concerns that Acadia may choose to close the Bangor facility because of the Director and Manager's misconduct.

8

44. Ms. Keeran's coworker shared the December 14 text exchange with Manager.

45. On December 16, 2015, while Ms. Keeran was still out on medical leave, Director and Manager called Ms. Keeran at home and told her that her employment was being terminated because she had disparaged the company.

46. Ms. Keeran received no progressive discipline before Defendants terminated her employment.

47. Within a week of terminating Ms. Keeran's employment, Defendants also terminated the employment of the two other women who had spoken up about Director's sexual harassment.

48. Acadia interfered with Ms. Keeran's right to work free from sex discrimination and sexual harassment by refusing to appropriately address Ms. Keeran's reports of sex discrimination, and by participating in the termination of her employment.

49. Ms. Keeran engaged in protected conduct under the Maine Whistleblowers' Protection Act by reporting to supervisors and human resources what she believed was illegal sexual harassment and illegal conversion of client funds.

50. Defendants' alleged legitimate, non-discriminatory reasons for terminating Ms. Keeran's employment are false and pretextual.

51. During the third and fourth quarters of 2015, Acadia completed the acquisition of at least 12 inpatient facilities, including Discovery House. Discovery House operates 19 treatment centers across Rhode Island, Pennsylvania, Utah, and Maine.

52. Discovery House and Acadia functioned as a single or joint employer of Ms. Keeran.

53. Discovery House and Acadia have common management, closely interrelated operations, and together exert control over employment decisions.

54. Ms. Keeran was instructed to report her concerns about sexual harassment at Discovery House to Acadia's human resources department.

55. Acadia's Human Resource Business Partner, Shannon Slade, visited Discovery House in December of 2015 in her management capacity as a human resources representative.

56. When Ms. Keeran requested reimbursement for her mileage, Acadia and Discovery House personnel handled the request jointly.

57. Acadia required that Ms. Keeran complete an "Employee Purchasing Card Agreement" in October 2015.

58. The paperwork related to Ms. Keeran's termination of employment with Defendants has the Acadia insignia at the top.

## Administrative Procedure

59. On September 12, 2016, Ms. Keeran completed, signed, and submitted an Intake Questionnaire with the Maine Human Rights Commission alleging unlawful sex discrimination and retaliation against Discovery House.

60. On October 20, 2016, Ms. Keeran filed a complaint for unlawful sex discrimination, retaliation, and whistleblower retaliation against Discovery House with the Maine Human Rights Commission ("MHRC") and Equal Employment Opportunity Commission.

61. On October 11, 2018, the MHRC issued an investigator's report recommending that the Commission issue a reasonable grounds finding that Discovery House discriminated against Ms. Keeran on the basis of sex and hostile work environment, and retaliated against her for engaging in protected conduct.

62. On November 20, 2018, the MHRC issued a reasonable grounds finding in favor of Ms. Keeran.

63. On February 19, 2019, the MHRC issued a notice of failed conciliation and a right to sue letter.

64. Under 5 M.R.S.A. § 4622, Ms. Keeran has satisfied one or more of the prerequisites to be awarded attorney fees and all available damages under the Maine Human Rights Act.

65. Ms. Keeran has exhausted all administrative remedies for all claims in this action that require administrative exhaustion.

## Legal Claims

66. The allegations in paragraphs 1-65 are realleged.

67. Defendants have intentionally discriminated against Ms. Keeran because of her sex, retaliated against her for reporting conduct she reasonably believed was unlawful, retaliated against her for taking medical leave, interfered with her right to work free from sex discrimination, and interfered with her right to take medical leave, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Maine Human Rights Act, 26 M.R.S. §§ 831 *et seq.*, the Maine Family Medical Leave Requirements law, 26 M.R.S. § 844, and the Maine Whistleblowers' Protection Act, 26 M.R.S.A. §§ 831-840.

68. Ms. Keeran is pursuing all possible methods of proving discrimination, interference, and retaliation, including but not limited to, circumstantial and direct evidence, pretext evidence, as well as causation based on a single unlawful motive and mixed motives, including an unlawful motive.

69. As a direct and proximate result of Defendants' intentional discrimination, interference, and retaliation, Ms. Keeran has suffered and

will continue to suffer damages, including, but not limited to, back pay and benefits, loss of self-confidence and self-respect, humiliation and embarrassment, emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of her job and of her life, injury to reputation, and other pecuniary and non-pecuniary losses. Wherefore, Plaintiff requests relief against Defendants as follows:

(a) Enter declaratory relief that Defendants violated Plaintiff's statutory civil rights to be free of sex discrimination, interference, and unlawful retaliation;

(b) Enter injunctive relief ordering Defendants to:

- provide effective civil rights training for all human resources employees and all supervisors on the requirements of all applicable laws prohibiting employment discrimination because of sex and complete this training within 60 days of the entry of Judgment for Injunctive Relief;

- provide this training for two years after the date judgment is entered to all new human resources and supervisory employees within 60 days of their starting the position;

- maintain attendance sheets identifying each person who

attended each training session and forward a copy of the attendance sheets to Plaintiff's counsel within seven days of each training session;

- post at each of its worksites a copy of a remedial notice detailing the judgment in this case as well as the order providing injunctive relief;

- send a letter printed on Defendants' letterhead to all of Defendants' employees advising them of the judgment in this case, enclosing a copy of their policies regarding anti-discrimination and retaliation, and stating that they will not tolerate any such discrimination or retaliation, and will take appropriate disciplinary action against any employee or agent of Defendants who engages in such discrimination;

- send a letter printed on Defendants' letterhead to Ms. Keeran rescinding her termination and apologizing for wrongfully terminating her employment in December 2015;

(c) Award Plaintiff back pay for lost wages and benefits and prejudgment interest thereon and reinstatement to her position, or, in lieu thereof, front pay for future lost wages and benefits;

(d) Award compensatory damages in amounts to be determined at trial by the jury and prejudgment interest thereon;

(e) Award punitive damages in amounts to be determined at trial by the jury and prejudgment interest thereon;

(f) Award Plaintiff full costs and reasonable attorney's fees; and

(g) Award such further relief as is deemed appropriate.

Date: May 20, 2019

Respectfully submitted,

/s/ Valerie Z. Wicks
David G. Webbert, Esq.
Carol J. Garvan, Esq.
Valerie Z. Wicks, Esq.
Johnson, Webbert & Young, L.L.P.
160 Capitol Street, P.O. Box 79
Augusta, Maine 04332-0079
(207) 623-5110
dwebbert@work.law
cgarvan@work.law
vwicks@work.law

*Attorneys for Plaintiff*